**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC, | |
| Plaintiff, | Civil Action No. 7:25-cv-00395 |
| v. | **JURY TRIAL DEMANDED** |
| NXP USA, INC., | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant NXP USA, Inc. ("NXP" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| 1. | 7,177,285 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285 |
| 2. | 7,463,596 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596 |
| 3. | 7,911,979 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979 |
| 4. | RE44,904 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44904 |
| 5. | 7,027,465 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7027465 |
| 6. | 6,832,249 | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/6832249 |

2.      Plaintiff seeks monetary damages.

## PARTIES

3.      CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.      On public information and belief, Defendant NXP USA, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 6501 W. William Cannon Dr., Austin, Texas 78735.

5.      On public information and belief, Defendant maintains established places of business at 6501 W. William Cannon Dr., Austin, Texas 78735 and 3501 Ed Bluestein Blvd., Austin, TX 78721. *See NXP in the United States*, NXP (last visited Aug. 25, 2025), *available at* https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA.

6.      On public information and belief, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with their products and services as set forth in this Complaint.

7.      On information and belief based upon public information, Defendant can be served at Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

8.      CommWorks repeats and re-alleges the allegations in paragraphs 1-7 above as though fully set forth in their entirety.

9.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under

28 U.S.C. § 1331 and § 1338(a).

10.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, in the State of Texas and in the United States, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; and (iii) having an interest in, using or possessing real property in Texas.

11.     Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through its inducement of third parties, and offering its products or services, including those accused of infringement here, to customers and potential customers located in this District.

12.     Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendant regularly sells (either directly or indirectly), its products within this District. For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established distribution channel, with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas. Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to residents and consumers.

13.     Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Western District of Texas, and Defendant

has committed acts of infringement in the Western District of Texas, has conducted business in the Western District of Texas, and/or has engaged in continuous and systematic activities in the Western District of Texas.

14.     Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district as to Defendant at least because Defendant has maintained established and regular places of business in this Distract, has transacted business in this District, and has committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.

15.     On public information and belief, and as discussed above in paragraph 5, Defendant has physical facilities and employees in Texas, including offices 6501 W. William Cannon Dr., Austin, Texas 78735 and 3501 Ed Bluestein Blvd., Austin, TX 78721. *See NXP in the United States*, NXP (last visited Aug. 25, 2025), *available at* https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA.

16.     Defendant has previously not contested the propriety of venue in this District for patent infringement actions and has also admitted that it has facilities and employees located in this District. *See Redstone Logics LLC v. NPX USA, Inc.*, 7:24-cv-00028-ADA-DTG, Dkt. No. 58, at ¶ 7 (W.D. Tex. Apr. 10, 2025); *Parkervision, Inc. v. NXP Semiconductors N.V., et al.*, 6:23-cv-00389-ADA, Dkt. No. 25, at ¶¶ 25-26 (W.D. Tex. Sept. 22, 2023); *Sheelds Cyber Ltd. v. NXP USA, Inc.*, 1:23-cv-01169-RP, Dkt. No. 10, at ¶ 9 (W.D. Tex. Dec. 4, 2023).

## THE ACCUSED PRODUCTS

17.     CommWorks repeats and re-alleges the allegations in paragraphs 1-16 above as though fully set forth in their entirety.

18.     Defendant uses, causes to be used, manufactures, provides, supplies, or distributes one

or more NXP Systems-on-Chips (SoCs), and/or devices, including, but not limited to the "Accused Products," set forth below:

- NXP chips and/or devices with **Wi-Fi Multimedia (WMM) and/or 802.11-2007+** wireless QoS functionality, which include but are not limited to:

  - the exemplary NXP 88W9977, 88W8964, 88W8987, 88W8897 (including the PCIe-W8897 (WFA60753-3127994, WFA60753-3079308, and WFA58634-2631413), PCIe (WFA17282-18632), and PCIe8897 (WFA17570-18943)), IW416, 88W8801, 88MW320, 88MW322, AP-95 (WFA7945-16583 and WFA7945-7466), 88W8787 (RD-88W-PLUG-8787-A0 (WFA10398-16582, WFA10398-10968, WFA10398-10251, WFA16773-18888, and WFA16773-17976), RD-88W-PLUG-8787 (WFA14957-17467, WFA14957-17386, WFA14957-17342, WFA14957-16823, and WFA14957-15620), RD-88W-PLUG-8787-B0 (WFA53748-2184697, WFA53748-1714141,WFA52904-1784024, and WFA52904-1599186)), NXP WiFi 5 Module for IOT (i.MX8M-AW-CM358 (WFA101603-11537600, and WFA101083-11374753)), RT1060-PAN9026, RT1060-AW-NM191NF, RD-88W-AP-STA-9064-DR2-WIFI-S0 (WFA83234-9873653, WFA83234-9763512, WFA83234-9762071, WFA83234-8863254, WFA83234-8854988, WFA83234-8247016, and WFA83234-8277495)), W8964 (WFA64905-8809685, WFA64905-7105043, WFA64905-5086136, WFA64905-4323551, and WFA64905-4015259), USB-8797 (WFA54166-2201243, WFA54166-2058720, WFA54166-1956867, and WFA54166-1798226), USB-8782 (WFA14877-1797295, WFA14877-17679, WFA14877-16576, WFA14877-15690, and WFA14877-15528), AW-CU300,

Marvell 8964, RD-8897 (reference design), RD-8897 (enterprise category), SD-8797, 88W9098, CW641, and 88W8686 (88W8686-B13CBB1-B115-T and 88W8686-B2-NAP1C000);

- NXP devices/chips supporting **Wi-Fi Protected Setup (WPS)** functionality, which include, but are not limited to:

  o the exemplary NXP Seahawk Aw690, Seahawk 9098, IW612, IW612 Android, IW620, AP- 95 (WFA7945-16583 and WFA7945-7466), 88W8787 (RD-88W-PLUG-8787-A0 (WFA10398-16582, WFA10398-10968,WFA16773-18888 and WFA16773-17976), RD-88W-PLUG-8787-B0 (WFA52904-1784024 and WFA52904-1599186)), USB-8797 (WFA54166-2201243, WFA54166-2058720, WFA54166-1956867 and WFA54166-1798226), 88W8987, USB-8782 (WFA14877-1797295, WFA14877-17679, WFA14877-16576 and WFA14877-15690), SD-8797, CW641, 88W8997, IW416, 88W8801, 88W9098 and 88W9064;

- NXP chips with **IEEE 802.3ah support** such as the exemplary MPC8358E series including, but not limited to, the MPC8358ECVRAGDDA, MPC8358EVRAGDDA, MPC8358ECVRAGDGA, MPC8358CVRAGDGA, MPC8358EVRAGDGA, MPC8358VRAGDDA, MPC8358VRAGDGA, MPC8358VRADDDA, MPC8358CVRAGDDA, MPC8358CVRADDDA, MPC8358CVVAGDGA, MPC8358ECVVAGDGA, MPC8358EVVAGDGA, MPC8358VVADDEA, and MPC8358VVAGDGA); the MPC8360E series, including, but not limited to, MPC8360CVVAGDGA, MPC8360CVVAJDGA, MPC8360ECVVAGDGA, MPC8360ECVVAJDGA, MPC8360EVVAGDGA, MPC8360EVVAJDGA,

MPC8360EVVALFHA, MPC8360EZUAJDGA, MPC8360EZUALFHA, MPC8360VVAGDGA, MPC8360VVAJDGA, MPC8360VVALFHA, and MPC8360ZUAJDGA); the MPC8309 series, including, but not limited to, the MPC8309CVMADDCA, MPC8309CVMAFDCA, MPC8309CVMAGDCA, MPC8309CVMAHFCA, MPC8309VMADDCA, MPC8309VMAFDCA, MPC8309VMAGDCA, and MPC8309VMAHFCA;

- NXP devices, including, as a non-limiting example, NXP chips, System-on-Chips (SoCs), and/or devices, such as the MPC8340BPON, MSC7120, MC92701, and MSC7104, with ITU-T G.984 and/or ITU-T G.9807.1 functionality; and

- All other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

19.    On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

20.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,177,285

21.    CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

22.    For purposes of this Count I only, the term "Accused Products" shall include, but are not limited to, NXP chips and/or devices with Wi-Fi Protected Setup (WPS) functionality such as

the exemplary NXP Seahawk Aw690, Seahawk 9098, IW612, IW612 Android, IW620, AP-95 (WFA7945-16583 and WFA7945-7466), 88W8787 (RD-88W-PLUG-8787-A0 (WFA10398-16582, WFA10398-10968,WFA16773-18888 and WFA16773-17976), RD-88W-PLUG-8787-B0 (WFA52904-1784024 and WFA52904-1599186)), USB-8797 (WFA54166-2201243, WFA54166-2058720, WFA54166-1956867 and WFA54166-1798226), 88W8987, USB-8782 (WFA14877-1797295, WFA14877-17679, WFA14877-16576 and WFA14877-15690), SD-8797, CW641, 88W8997, IW416, 88W8801, 88W9098 and 88W9064 (collectively, the "Accused Products").

23.    The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959 which was filed October 8, 2004. The '285 patent is entitled "Time Based Wireless Access Provisioning."

24.    CommWorks owns all substantial rights, interest, and title in and to the '285 patent, including the sole and exclusive right to prosecute this action and enforce the '285 patent against infringers and to collect damages for all relevant times.

25.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '285 patent.

26.    The claims of the '285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems. The written description of the '285 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '285 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

28.    The invention of the '285 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '285 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49.  The invention of the '285 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '285 patent was not conventional at the

time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

29.    Defendant has directly infringed the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

30.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '285 patent, as detailed in **Exhibit A** (Evidence of Use Regarding U.S. Patent No. 7,177,285).

31.    On information and belief, Defendant has infringed the '285 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Accused Products.

32.    For example, as detailed in **Exhibit A**, Defendant has infringed at least claim 1 of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for provisioning between a wireless device and a network. **Ex. A**. The process for provisioning comprises the step of tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device. *Id.* The process for provisioning further comprises the step of initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval. *Id.*

33.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,463,596

34.     CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

35.     For purposes of this Count II only, the term "Accused Products" shall include, but are not limited to, NXP chips and/or devices with Wi-Fi Protected Setup (WPS) functionality such as the exemplary NXP Seahawk Aw690, Seahawk 9098, IW612, IW612 Android, IW620, AP-95 (WFA7945-16583 and WFA7945-7466), 88W8787 (RD-88W-PLUG-8787-A0 (WFA10398-16582, WFA10398-10968,WFA16773-18888 and WFA16773-17976), RD-88W-PLUG-8787-B0 (WFA52904-1784024 and WFA52904-1599186)), USB-8797 (WFA54166-2201243, WFA54166-2058720, WFA54166-1956867 and WFA54166-1798226), 88W8987, USB-8782 (WFA14877-1797295, WFA14877-17679, WFA14877-16576 and WFA14877-15690), SD-8797, CW641, 88W8997, IW416, 88W8801, 88W9098 and 88W9064 (collectively, the "Accused Products").

36.     The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007. The '596 patent is entitled "Time Based Wireless Access Provisioning."

37.     CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce the '596 patent against infringers and to collect damages for all relevant times.

38.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the

'596 patent.

39.    The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

40.    The written description of the '596 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41.    For example, at the time of the invention, wireless access to data networks was not yet conventional.   Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.   '596 patent at col. 3:13-26.   Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.   *Id.* at col. 3:27-36.

42.    The invention of the '596 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."   *Id.* at col. 3:37-41.   The invention of the '596 patent further improved upon existent provisioning systems by providing a wireless access provisioning

structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49. The invention of the '596 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '596 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

43.     Defendant has directly infringed the '596 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

44.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '596 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,463,596).

45.     On information and belief, Defendant has infringed the '596 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Accused Products.

46.     For example, as detailed in **Exhibit B**, Defendant, using the Accused Products, has infringed at least claim 1 of the '596 patent by making, using, offering to sell, selling, and/or

importing the Accused Products, which perform a process for associating devices. **Ex. B**. The process for associating devices comprises the step of tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device. *Id.* The process for associating devices further comprises the step of automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval. *Id.*

47.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,911,979

48.     CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

49.     For purposes of this Count III, the term "Accused Products" shall include, but are not limited to, NXP chips and/or devices with Wi-Fi Protected Setup (WPS) functionality such as the NXP Seahawk Aw690, Seahawk 9098, IW612, IW612 Android, IW620, AP-95 (WFA7945-16583 and WFA7945-7466), 88W8787 (RD-88W-PLUG-8787-A0 (WFA10398-16582, WFA10398-10968,WFA16773-18888 and WFA16773-17976), RD-88W-PLUG-8787-B0 (WFA52904-1784024 and WFA52904-1599186)), USB-8797 (WFA54166-2201243, WFA54166-2058720, WFA54166-1956867 and WFA54166-1798226), 88W8987, USB-8782 (WFA14877-1797295, WFA14877-17679, WFA14877-16576 and WFA14877-15690), SD-8797, CW641, 88W8997, IW416, 88W8801, 88W9098 and 88W9064 (collectively, the "Accused Products").

50.     The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22,

2011, after full and fair examination of Application No. 12/323,399 which was filed on November 25, 2008. The '979 patent is entitled "Time Based Access Provisioning System And Process." A Certificate of Correction was issued on July 19, 2011.

51.    CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce the '979 patent against infringers and to collect damages for all relevant times.

52.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent.

53.    The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

54.    The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55.    For example, at the time of the invention wireless access to data networks was not yet conventional. Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate

wireless access provisioning. '979 patent at col. 3:19-31. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:32-41.

56.     The invention of the '979 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:42-46. The invention of the '979 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:47-53. The invention of the '979 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:54-62. Moreover, the structure of the devices described in the '979 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

57.     Defendant has directly infringed the '979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

58.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '979 patent, as detailed in **<u>Exhibit C</u>** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,911,979).

59.    On information and belief, Defendant has infringed the '979 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the Accused Products.

60.    For example, as detailed in **<u>Exhibit C</u>**, Defendant, using the Accused Products, has infringed at least claim 1 of the '979 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a provisioning process performed by a provisioning system having provisioning logic. **<u>Ex. C</u>**. The provisioning process performed comprises tracking, by the provisioning logic, an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device. *Id.* The provisioning process performed in the Accused Products further comprises sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval. *Id.*

61.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: <u>INFRINGEMENT OF U.S. PATENT NO. RE44,904</u>

62.    CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

63.    For purposes of this Count IV only, the term "Accused Products" shall include, but are not limited to, NXP chips and/or devices with Wi-Fi Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary NXP 88W8977, 88W8964, 88W8987, 88W8897 (PCIe-W8897 (WFA60753-3127994, WFA60753-3079308, and WFA58634-2631413), PCIe (WFA17282-18632), and PCIe8897 (WFA17570-18943)), IW416, 88W8801, 88MW320, 88MW322, AP-95 (WFA7945-16583 and WFA7945-7466), 88W8787 (RD-88W-PLUG-8787-A0 (WFA10398-16582, WFA10398-10968, WFA10398-10251, WFA16773-18888, and WFA16773-17976), RD-88W-PLUG-8787 (WFA14957-17467, WFA14957-17386, WFA14957-17342, WFA14957-16823, and WFA14957-15620), RD-88W-PLUG-8787-B0 (WFA53748-2184697, WFA53748-1714141,WFA52904-1784024, and WFA52904-1599186)), NXP WiFi 5 Module for IOT (i.MX8M-AW-CM358 (WFA101603-11537600, and WFA101083-11374753)), RT1060-PAN9026,        RT1060-AW-NM191NF,        RD-88W-AP-STA-9064-DR2-WIFI-S0 (WFA83234-9873653,    WFA83234-9763512,    WFA83234-9762071,    WFA83234-8863254, WFA83234-8854988, WFA83234-8247016, and WFA83234-8277495)), W8964 (WFA64905-8809685, WFA64905-7105043, WFA64905-5086136, WFA64905-4323551, and WFA64905-4015259), USB-8797 (WFA54166-2201243, WFA54166-2058720, WFA54166-1956867, and WFA54166-1798226), USB-8782 (WFA14877-1797295, WFA14877-17679, WFA14877-16576, WFA14877-15690, and WFA14877-15528), AW-CU300, Marvell 8964, RD-8897 (reference design), RD-8897 (enterprise category), SD-8797, 88W9098, CW641, and 88W8686 (88W8686-B13CBB1-B115-T and 88W8686-B2-NAP1C000) (collectively, the "Accused Products").

64.    The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014.  The '904 patent is entitled "Method For Contention Free Traffic Detection."

65.    CommWorks owns all substantial rights, interest, and title in and to the '904 patent,

including the sole and exclusive right to prosecute this action and enforce the '904 patent against infringers and to collect damages for all relevant times.

66.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

67.    The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

68.    The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

69.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '904 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found. *Id.* at col. 1:63-2:2. This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 2:5-8. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information

needed for identifying the data was huge.  *Id.* at col. 2:8-14.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP).  *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority.  *Id.* at col. 2:20-25.

70.     The invention of the '904 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP.  *Id.* at col. 2:29-32, 3:2-4, 3:52-53.  The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols.  *Id.* at col. 2:62-65.  The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device.  *Id.* at col. 3:5-8, 3:14-21.  A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network.  *Id.* at col. 3:22-31.

71.     Defendant has directly infringed the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

72.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent, as detailed in **<u>Exhibit D</u>** to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

73.     On information and belief, Defendant, using the Accused Products, has infringed the '904 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia ("WMM") and/or 802.11-2007+ compatible chips, such as, for example, the TI Wi-Fi Multimedia Products.

74.     For example, as detailed in **Exhibit D**, Defendant, using the Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising extracting a bit pattern from a predetermined position in a frame. **Ex. D**.  The method further comprises comparing said extracted bit pattern with a search pattern.  *Id.*  The method further comprises identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.*  The method further comprises forwarding said received frame to a high priority queue in case said frame is detected to be a high priority frame during a special period for sending priority traffic.  *Id.*  The method further comprises adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames.  *Id.*

75.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,027,465

76.     CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

77.     For purposes of this Count V only, the term "Accused Products" shall include, but are not limited to, NXP chips and/or devices with Wi-Fi Multimedia (WMM) and/or 802.11-2007+ wireless QoS functionality such as the exemplary NXP 88W8977, 88W8964, 88W8987, 88W8897

(PCIe-W8897 (WFA60753-3127994, WFA60753-3079308, and WFA58634-2631413), PCIe (WFA17282-18632), and PCIe8897 (WFA17570-18943)), IW416, 88W8801, 88MW320, 88MW322, AP-95 (WFA7945-16583 and WFA7945-7466), 88W8787 (RD-88W-PLUG-8787-A0 (WFA10398-16582, WFA10398-10968, WFA10398-10251, WFA16773-18888, and WFA16773-17976), RD-88W-PLUG-8787 (WFA14957-17467, WFA14957-17386, WFA14957-17342, WFA14957-16823, and WFA14957-15620), RD-88W-PLUG-8787-B0 (WFA53748-2184697, WFA53748-1714141,WFA52904-1784024, and WFA52904-1599186)), NXP WiFi 5 Module for IOT (i.MX8M-AW-CM358 (WFA101603-11537600, and WFA101083-11374753)), RT1060-PAN9026, RT1060-AW-NM191NF, RD-88W-AP-STA-9064-DR2-WIFI-S0 (WFA83234-9873653, WFA83234-9763512, WFA83234-9762071, WFA83234-8863254, WFA83234-8854988, WFA83234-8247016, and WFA83234-8277495)), W8964 (WFA64905-8809685, WFA64905-7105043, WFA64905-5086136, WFA64905-4323551, and WFA64905-4015259), USB-8797 (WFA54166-2201243, WFA54166-2058720, WFA54166-1956867, and WFA54166-1798226), USB-8782 (WFA14877-1797295, WFA14877-17679, WFA14877-16576, WFA14877-15690, and WFA14877-15528), AW-CU300, Marvell 8964, RD-8897 (reference design), RD-8897 (enterprise category), SD-8797, 88W9098, CW641, and 88W8686 (88W8686-B13CBB1-B115-T and 88W8686-B2-NAP1C000) (collectively, the "Accused Products").

78.    The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986 which was filed on June 11, 2002. The '465 patent is entitled "Method For Contention Free Traffic Detection."

79.    CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce the '465 patent against infringers and to collect damages for all relevant times.

80.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent.

81.     The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

82.     The written description of the '465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83.     For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all."  '465 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:53-59.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 1:62-65. All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 1:66-2:4.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points

(AP).  *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority.  *Id.* at col. 2:11-15.

84.     The invention of the '465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP.  *Id.* at col. 2:19-23, 2:60-62, 3:43.  The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols.  *Id.* at col. 2:53-56.  The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device.  *Id.* at col. 2:63-66, col. 3:5-11.  A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network.  *Id.* at col. 3:12-21.

85.     Defendant has directly infringed the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

86.     Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in **Exhibit E** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,027,465).

87.     On information and belief, Defendant, using the Accused Products, has infringed the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by

performing methods for contention free traffic detection using Wi-Fi Multimedia (WMM) and/or 802.11-2007+ compatible chips and devices, such as, for example, the TI Wi-Fi Multimedia Products.

88.    For example, as detailed in **Exhibit E**, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network.  **Ex. E**.  The method for detecting priority of data frames comprises the step of extracting a bit pattern from a predetermined position in a frame.  *Id.*  The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern.  *Id.*  The method for detecting priority of data frames further comprises the step of identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.* In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame.  *Id.*

89.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 6,832,249

90.    CommWorks repeats and re-alleges the allegations in paragraphs 1-20 above as though fully set forth in their entirety.

91.    For purposes of this Count VI, the Accused Products first include NXP chips with IEEE 802.3ah support such as the exemplary MPC8358E series (MPC8358ECVRAGDDA, MPC8358EVRAGDDA, MPC8358ECVRAGDGA, MPC8358CVRAGDGA, MPC8358EVRAGDGA, MPC8358VRAGDDA, MPC8358VRAGDGA, MPC8358VRADDDA,

MPC8358CVRAGDDA, MPC8358CVRADDDA, MPC8358CVVAGDGA, MPC8358ECVVAGDGA, MPC8358EVVAGDGA, MPC8358VVADDEA, and MPC8358VVAGDGA), MPC8360E series (MPC8360CVVAGDGA, MPC8360CVVAJDGA, MPC8360ECVVAGDGA, MPC8360ECVVAJDGA, MPC8360EVVAGDGA, MPC8360EVVAJDGA, MPC8360EVVALFHA, MPC8360EZUAJDGA, MPC8360EZUALFHA, MPC8360VVAGDGA, MPC8360VVAJDGA, MPC8360VVALFHA, and MPC8360ZUAJDGA), MPC8309 series (MPC8309CVMADDCA, MPC8309CVMAFDCA, MPC8309CVMAGDCA, MPC8309CVMAHFCA, MPC8309VMADDCA, MPC8309VMAFDCA, MPC8309VMAGDCA, and MPC8309VMAHFCA) (collectively, the "802.3ah Accused Products").

92.    For purposes of this Count VI, the Accused Products also include NXP devices, including, as a non-limiting example, NXP chips, System-on-Chips (SoCs), and/or devices, such as MPC8340BPON, MSC7120, MC92701, and MSC7104, with ITU-T G.984 and/or ITU-T G.9807.1 functionality (collectively, the "ITU-T Accused Products").

93.    The USPTO duly issued U.S. Patent No. 6,832,249 (the "'249 patent") on December 14, 2004, after full and fair examination of Application No. 09/860,801 which was filed May 18, 2001. The '249 patent is entitled "Globally Accessible Computer Network-Based Broadband Communication System with User-Controllable Quality of Information Delivery and Flow Priority."

94.    CommWorks owns all substantial rights, interest, and title in and to the '249 patent, including the sole and exclusive right to prosecute this action and enforce the '249 patent against infringers and to collect damages for all relevant times.

95.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '249 patent.

96.     The claims of the '249 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. At the time of the invention, millions of Internet users being online simultaneously, thereby causing congestion (too many users) and latency (long pauses and delays), presented a difficult bandwidth load management challenge. '249 patent at 1:32-34, 2:34-36. No conventional routing system existed that avoided the congestion and best effort delivery methods then used by the Internet. *Id.* at 2:8-10. Conventional routing systems relating to multiple OSI layers also did not consistently ensure quality of service. *Id.* at 6:53-63.

97.     The invention of the '249 patent improved upon the conventional services delivery systems by enabling quality of service control by content providers, Application Service Providers (ASPs), ISPs, and, by extension, their customers. *Id.* at 3:60-63. Additional improvements over the conventional services delivery systems afforded by the invention of the '249 patent included bridging the gaps between the layers of the OSI reference model; ensuring more control by users over the priority of their information flow; more control by network administrators over the congestion of their networks; and more control by content providers over costs and the experiences they provide to their users. *Id.* at 3:65-4:2, 6:53-63.

98.     Defendant has directly infringed the '249 patent by making, using, offering to sell, selling, and/or importing the 802.3ah and ITU-T Accused Products identified above.

99.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 11 and 38 of the '249 patent, as detailed in **<u>Exhibit F</u>** and **<u>Exhibit G</u>** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,832,249).

100.    On information and belief, Defendant has infringed the '249 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States the 802.3ah and ITU-T Accused Products.

101.    For example, as detailed in **Exhibit F**, Defendant has infringed at least claim 11 of the '249 Patent by making, using, offering to sell, selling, and/or importing the 802.3ah Accused Products, which perform a method for providing broadband communications over a multi-layered network  having a plurality of Open System Interconnection (OSI) reference model layers functioning therein, comprising: monitoring at least one OSI reference model layer functioning in the multi-layered network; determining that a quality of service event has occurred in the multilayered network; determining that the quality of service event occurred at a layer N in the OSI reference model; responding to the quality of service event in the multi-layered network by changing network provisioning at a layer less than N; and signaling that the network provisioning at the layer less than N has been changed.  *Id.*

102.    For example, as detailed in **Exhibit G**, Defendant has infringed at least claim 38 of the '249 patent by making, using, offering to sell, selling, and or/importing the ITU-T Accused Products, which are systems for providing broadband communications, comprising: a multi-layered network having a plurality of Open System Interconnection (OSI) reference model layers functioning therein; a network monitor coupled to the multi-layered network, wherein the network monitor is adapted to: monitor at least one OSI reference model layer functioning in the multi-layered network; determine that a quality of service event has occurred in the multi-layered network; and determine that the quality of service event occurred at layer N in the OSI reference model; and a network controller coupled to the multi-layered network and the network monitor,

wherein the network controller is adapted to: respond to the quality of service event in the multi-layered network by changing the network provisioning at a layer less than N.  *Id.*

103.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

104.    CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

105.    CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

   a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

   b.    Judgment that Defendant account for and pay to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

   c.    Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

   d.    That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

   e.    All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>September 2, 2025</u>

Respectfully submitted,

By:<u>/s/ James F. McDonough, III</u>

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC*

\* Admitted to the Western District of Texas

<u>**Attachments**</u>
- Civil Cover Sheet

<u>**List of Exhibits**</u>

A. Evidence of Use Regarding U.S. Patent No. 7,177,285
B. Evidence of Use Regarding U.S. Patent No. 7,463,596
C. Evidence of Use Regarding U.S. Patent No. 7,911,979
D. Evidence of Use Regarding U.S. Patent No. RE44,904
E. Evidence of Use Regarding U.S. Patent No. 7,027,465
F. Evidence of Use Regarding U.S. Patent No. 6,832,249
G. Evidence of Use Regarding U.S. Patent No. 6,832,249